### ISABEL B. CRAFTS *vs.* LOIS D. McCOBB.

Suffolk.    October 5, 1937. — May 23, 1939.

Present: FIELD, C.J., DONAHUE, LUMMUS, & QUA, JJ.

*Snow and Ice. Nuisance. Way*, Public: nuisance. *Evidence*, Competency.

Evidence that along the middle of the bed of a hedge between a lawn and a public sidewalk there was a ridge of earth higher than the lawn, that the lawn was higher than the portion of the bed next it and higher than the sidewalk, and that a formation of ice extended continuously from the lawn, through a gap in the ridge of earth a few inches wide and deep, to and across the sidewalk, warranted a finding that a traveller on the sidewalk who fell on the ice was injured through a nuisance maintained by the landowner.

A nonexpert witness, having described the appearance of a gap in a small ridge of earth, properly was allowed to testify that he thought the gap was caused by ice which collected back of the ridge and "when it flowed it broke way through."

TORT.    Writ in the Superior Court dated February 2, 1933.

There was a verdict for the plaintiff in the sum of $9,500 at the trial before *O'Connell*, J.    The defendant alleged exceptions.

*P. C. Reardon*, (*J. F. Drum* with him,) for the defendant.
*W. P. Murray*, for the plaintiff.

DONAHUE, J.    The plaintiff seeks to recover damages for injuries received by her on December 19, 1932, as the result of a fall on a formation of ice on a sidewalk adjoining premises owned by, and under the control of, the defendant, at the junction of Ivy and Mountfort streets in the city of Boston.    At the close of the evidence introduced by the plaintiff the defendant rested.    There was a verdict for the plaintiff.    The defendant's exceptions here presented are to the denial of her motions for a directed verdict and for the entry of a verdict under leave reserved, to the denial of requests for rulings and to the admission of certain evidence.

The following general description of the defendant's premises is taken from the bill of exceptions. The building thereon is a four-story apartment house, "flat iron" in appearance and located between Ivy and Mountfort streets where they meet at an angle like the letter V. The building is set back about eight or nine feet from each street and the end of the building which is toward the junction of the two streets is about twenty-five feet distant from the inner edge of the sidewalk at the junction. The other end of the building abuts on an adjoining building. The open space between the building and the junction of the two streets is a grass-covered area or lawn triangular in shape, but rounded at the junction. The widest part of this open triangular area is about twenty-eight feet across from street to street. The lawn also extends along the front and the rear of the building. The lawn was substantially level, but was an inch or two higher than the sidewalk where the sidewalk adjoins it. Extending all around the outer edge of the lawn, next to the sidewalk, was a single row of shrubs, about a foot and a half high, spaced a few inches apart, and set in a bed of loose dirt, referred to in the testimony as a "hedge bed," which was about eighteen inches wide. The dirt was "hoed up" around the roots of the shrubs, forming a ridge of earth in the middle of the hedge bed so that the bed was higher in the middle than on each side. The portion of the hedge bed next to the lawn was lower than the lawn.

There was evidence showing the following facts. The plaintiff while walking along the sidewalk on Mountfort Street fell on a formation of ice opposite a portion of the hedge surrounding the triangular area on the defendant's premises above described. There were other formations of ice on the sidewalks on that day but at the point where the plaintiff fell there was more ice and it was "more glassy" than elsewhere. The ice which caused the plaintiff's fall extended across the sidewalk and was wider at the curb than at the inner edge of the sidewalk. There was a continuous formation of ice from the lawn, through a gap in the hedge bed and across the sidewalk. The gap in the

hedge bed which was opposite the place the plaintiff fell was four to six inches wide and two or three inches deep. This was the only place along the sidewalk on Mountfort Street adjoining the defendant's premises where ice extended from the lawn through the hedge bed and upon the sidewalk. The dirt in the center of the hedge bed was two or three inches above the level of the lawn, and the lawn was two and one half inches higher than the sidewalk. Icy conditions had been noticed at the spot where the plaintiff fell before the day of her accident. About a week before the accident there had been a rainstorm followed by freezing temperatures and the weather had continued cold up to the time of the accident.

1. On the evidence the conclusion was warranted that water coming upon the defendant's land from natural causes was collected on the lawn by the hedge bed made and maintained by her, that through a definite gap or channel in the hedge bed water was turned upon the sidewalk at a place other, and in quantities greater, than it would normally flow, and that it there froze into a dangerous formation of ice which caused injury to the plaintiff while she was in the exercise of due care. On such a finding the defendant was liable in damages to the plaintiff. *Hynes* v. *Brewer*, 194 Mass. 435, 439, and cases cited. *Field* v. *Gowdy*, 199 Mass. 568, 571. *Marston* v. *Phipps*, 209 Mass. 552, 554. *Cochran* v. *Barton*, 233 Mass. 147, 149. *MacDonald* v. *Adamian*, 294 Mass. 187, 191. *Bullard* v. *Mattoon*, 297 Mass. 182, 186. *Troy* v. *Dix Lumber Co.* 300 Mass. 214, 216. This case differs in its facts from *Hart* v. *Wright*, 235 Mass. 243; *Lucas* v. *Thayer*, 263 Mass. 313; *Grimm* v. *Promboin*, 265 Mass. 480; *Graham* v. *Andrews*, 273 Mass. 105; *Mahoney* v. *Perreault*, 275 Mass. 251; *Jefferson* v. *L'Heureux*, 293 Mass. 490. The denial of the motions for a directed verdict and for the entry of a verdict was not error.

2. The defendant excepted to the denial of seven requests for rulings. The fourth and fifth requests were in substance that the evidence did not warrant a finding that the defendant created or maintained a nuisance or a

finding that the defendant was negligent. There was evidence warranting each of these findings. *Smethurst* v. *Barton Square Independent Congregational Church*, 148 Mass. 261, 265. The sixth request was to the effect that if the natural drainage from the lawn was altered by maintaining a hedge, set in a bed, the surface of which was not even with the surface of the lawn, the defendant was not liable therefor. This is a request for a ruling on a portion of the pertinent evidence. It omits the element, as to which there was evidence, that water thereby collected was discharged upon the sidewalk in a definite channel. The other four requests were to the effect that the evidence did not warrant various findings of fact which we have earlier herein considered and held to have been warranted by the evidence. There was no error in the denial of the defendant's requests for rulings.

3. A witness, called by the plaintiff, who arrived at the scene of the accident soon after its occurrence, testified as to conditions there observed by him. He variously characterized the opening in the hedge bed as "a break," as "a gap" and as "a depression" and he gave its dimensions. Subject to the objection and exception of the defendant he was asked, in substance, if the appearance of the gap in the hedge bed indicated to him its cause, and answered in effect that in his opinion the gap was caused by ice which collected back of the hedge and "when it flowed it broke way through." He was manifestly testifying as to the result of his observations made at the place of the plaintiff's fall and giving a conclusion based on what he there saw. The visible effects on land resulting from water flowage "may not all easily be described in words, but may convey a distinct and decided impression to the mind." *Commonwealth* v. *Sturtivant*, 117 Mass. 122, 136. The testimony of the witness to which exception was taken conveyed the impression which the things he saw made upon him. It was within "the rule that a witness may state the results of his observation, even though this does in some measure involve his opinion or judgment as to matters which cannot be exactly reproduced or described

to the jury precisely as they appear to the witness." *Jenkins* v. *Weston*, 200 Mass. 488, 493, and cases cited. *Noyes* v. *Noyes*, 224 Mass. 125, 129. *Eldridge* v. *Barton*, 232 Mass. 183, 187. *McGrath* v. *Fash*, 244 Mass. 327, 329. *Correira* v. *Boston Motor Tours, Inc.* 270 Mass. 88, 90. Wigmore, Evidence, § 1924. The application of the rule is not here affected by the fact that, at the suggestion of the judge, the witness had testified as to his prior experience with respect to the effect of water upon land.

*Exceptions overruled.*