Donovan, J.
The defendants Trustees and Windsor Investment Co., Inc. move for summary judgment on Counts I and II which allege negligence against the defendants and Counts III and IV for breach of contract. For the following reasons the motion is allowed.
FACTS
For the purpose of summary judgment I shall set forth the facts agreed to by the parties and reference facts from the deposition of the plaintiff, Christopher D. Baker (Mr. Baker).
Mr. Baker’s accident occurred on the property owned by the nominee trust known as Sean H. Cummings and Stuart R. Johnson Nominee Trust wherein Messrs. Cummings and Johnson are the trustees. Mr. Baker rented an apartment at the complex which was managed by Windsor Investment Co., Inc.
Mr. and Mrs. Baker commenced their tenancy on April 1, 1995. During the night of November 28, 1995 the first snowfall of the season began and continued into the following day. On the morning of November 30th Mr. Baker left his apartment and walked to his car which was parked in a parking space perpendicular to Village Road West. He placed a sports bag in the trunk and brushed some ice or frost off his taillights. He took one step to his left when his left leg slipped and he fell to the ground. He fell while he was at the rear of his car and broke his leg.
Mr. Baker’s left foot slipped on ice that was smooth, shiny and glassy. The parking area had not been plowed or sanded. There were no foot prints or tire tracks where he fell. The snow and ice was on the ground for approximately 24 to 36 hours. He claims there was an unnatural accumulation of snow and ice because there was a catch basin directly adjacent to the parking lot which caused melting snow and ice to pool around the drain and freeze. The catch basin was about 8 to 10 feet from his car.
Paragraph 7 of the lease provides: “MAINTENANCE OF COMMON AREA. Improvements, maintenance and landscaping of the common area shall be done only by management unless permission of management has been obtained." Paragraph 23 reads: “No trustee . . . shall be personally liable to anyone under any terms, condition, covenant, obligation or agreement expressed herein or implied hereunder or for any claim of damage arising out of the occupancy of the Apartment.”
DISCUSSION
The defendants claim the facts do not support Mr. Baker’s position that there was an unnatural accumulation of snow or ice. Mr. Baker’s claim is premised on the fact the developers installed catch basins and curbing to catch the run off from the road.[1] He indicates the road has a crown which causes the run-off water to be channeled to the catch basin.
Mr. Baker submitted the local climatological data summary for November. The high temperatures for November 29th and the 30th were 36 degrees and 35 degrees and the low temperatures were 29 and 23, respectively. I shall accept as a fact for the purpose of this motion his contention there was melting followed by freezing during the evenings.
*101 The first issue is whether the defendants in constructing the development and installing the roadway within the complex did something to subject them to liability for the channeling of the melting snow. Mr. Baker cites Field v. Gowdy, 199 Mass. 568 (1908), as being instructive. There the Court stated: “a landowner has a right to change the surface of his lot, or improve it by the construction of buildings or by other means, in any lawful manner, and if the natural course of surface water is thereby altered no liability is imposed on him. But he has no right to collect water into a definite channel by a spout or otherwise and pour it upon a public way. If he does this and through the operation of natural causes the water freezes, he is the efficient cause in the creation of a nuisance and is liable for whatever damage ensues as a probable consequence.” Id. at 570, 571. There was evidence showing Gowdy collected water from the roof of his house by means of two spouts and turned upon his concrete walk, and by the natural grade of the walk flowed to the sidewalk, where it froze in a ridge across the width of the public walk about three inches in thickness in the middle. This was sufficient to warrant a finding that the defendant collected the surface water in an artificial course and poured it upon the public way in such a manner as to create a nuisance.
The other case he finds supportive is Hooper v. Kennedy, 320 Mass. 576 (1947). There the facts showed the “ice, which was over the sidewalk, ‘was rough, not too smooth, [and] kind of in ridges.’ It extended inside the driveway at its northwest corner at least one and one half feet spreading across the sidewalk in the shape of a triangle which varied in width from 18 inches to four or five feet. The defendants, in excavating their land to build the driveway, created an artificial channel where water would flow onto the sidewalk in greater amounts than might have occurred in the natural state of the land.” Lucas v. Thayer, 263 Mass. 313, 314.
These cases are distinguishable and therefore not controlling. The trustees did not channel run-off water from the buildings as in Field, supra. Nor did they allow water to channel from the grassy or sidewalk area into the parking spaces. Rather, the roadway was constructed for water to run from the center of the road to the sides to the curbing and eventually into the catch basin. As stated in Field, supra “a landowner has a right to change the surface of his lot, or improve it by the construction of buildings or by other means, in any lawful manner, and if the natural course of surface water is thereby altered no liability is imposed on him.”
The evidence in Hooper, supra, shows clearly the ice came from the defendant’s property. It was “rough, not too smooth, [and] kind of in ridges.” Compare the statement of Mr. Baker who said the ice was “smooth, shiny and glassy.” There were no tire marks or footprints. The only inference one may draw is the ice Mr. Baker slipped on was a natural accumulation caused by the melting and refreezing of the snow.
There is evidence the property was salted, sanded and plowed before the accident. There is a long line of cases which instruct that a landowner is not liable if he shovels snow from the sidewalk and it melts and runs over the sidewalk and forms ice. Sullivan v. Town of Brookline, 416 Mass. 825, 827 (1994); citing Mahoney v. Perreault, 275 Mass. 251, 252 (1931). The shoveling of the snow onto the grassy area did not create an artificial channel or water spout subjecting the property owner to liability. Id. 252. Even if the evidence contradicted Mr. Baker’s assertion there was no plowing or sanding, it does not establish liability on the Trustees because the case would be controlled by Mahoney.
Mr. Baker claims a material issue exists regarding the Trustees’ obligation under the lease to remove the snow and ice. He refers to Paragraph 7 quoted above. However, the interpretation of “maintenance” is not required because as stated if the Trustees or the management company were required to plow and sand, the situs of Mr. Baker’s serious injury occurred on a natural accumulation of ice caused by the melting of snow followed by the freezing temperatures.
ORDER
It is hereby ORDERED that there is no genuine issue as to a material fact and the defendants’ are entitled to judgment as a matter of law. There being no liability on the defendants it hereby ORDERED the third party action be dismissed.

The parties agree the road is a private way meandering through the complex.